872 So.2d 424 (2004)
SPECIALIZED MACHINERY TRANSPORT, INC., Appellant/Cross-Appellee,
v.
Henry H. WESTPHAL, Appellee/Cross-Appellant.
No. 5D03-1707.
District Court of Appeal of Florida, Fifth District.
May 7, 2004.
*425 Rexford H. Stephens and Stacey L. Cole of Akerman Senterfitt, Orlando, for Appellant/Cross-Appellee.
Mark O. Cooper of O'Neill, Liebman & Cooper, P.A., Orlando, for Appellee/Cross-Appellant.
PETERSON, J.
Specialized Machinery Transport, Inc., ("Specialized"), appeals a final summary judgment entered in favor of Henry H. Westphal who sought the final payment under a contract for the sale of his business to Specialized. We reverse.
Westphal sold certain assets of his trucking and specialized transport business to Specialized including all licenses, permits and authorities to operate the assets and business. The sale also included the goodwill of the business and Westphal's agreement not to compete directly or indirectly with Specialized for a period of three years. Payment was to be made in installments within a two-year period and when the last installment went unpaid, Westphal sued.
Among the assets that Specialized purchased was a license issued by the Interstate Commerce Commission, number MC-186433, known as an "authority." After the purchase, Specialized placed authority MC-186433 in an inactive status because it had another authority under which it could operate the trucking business purchased from Westphal. It is undisputed that Westphal had operated his trucking business only under this one authority.[1] Specialized believed that it had purchased Westphal's trucking business in its entirety, including all names by which Westphal had previously conducted business, *426 when it purchased authority MC-186433.
Westphal continued to work for Specialized after the sale for over a year, but then retired. Shortly after Westphal's departure, Specialized's business revenue decreased by sixty percent within four months. The reason became apparent when Specialized discovered a truck operated by Westphal's son bearing the name "H & D Westphal" was transporting freight for at least one of Specialized's former customers. The renewed competition resulted in the closing of Specialized's business.
Westphal testified at his deposition that the business he sold to Specialized was the trucking business he personally had been operating and that the sale included the unregistered fictitious name "H & D Industrial Equipment." He confirmed that authority MC-186433 had been issued to "H. D. Westphal, dba H & D Industrial Equipment Engineering & Rigging Co." Nevertheless, he denied that he breached his promise not to compete by "selling" the name "H & D Westphal" to his son. More revealing is the fact that Westphal admitted applying for a new authority which was denied and then reactivating MC-186433 instead. When asked why he reactivated it and what he was going to do with the authority, he responded "no special reason" and "nothing."
The trial court granted summary judgment to Westphal based upon Specialized's admission that it did not make the final installment payment and Westphal's self-serving affidavit that he did not engage in any conduct which constituted prohibited competition.
We are unable to glean from the judgment why the trial court granted summary judgment in view of the facts before it disputing Westphal's conclusion that he did not breach his non-competition agreement. If the court seized only upon the notion that Westphal's "sale" of the business name "H & D Westphal" to his son was not inconsistent with the sale of "H & D Industrial Equipment" or "H. D. Westphal, dba H&D Industrial Equipment Engineering & Rigging Co.," that limited consideration was not correct. The intention of the parties in this sale must be determined from an examination of the entire contract and not from separate phrases or paragraphs. E.g., Lalow v. Codomo, 101 So.2d 390 (Fla.1958). Thus, the meaning is not to be gathered from any one phrase, but from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others. E.g., Paddock v. Bay Concrete Industries, Inc., 154 So.2d 313 (Fla. 2d DCA 1963) (holding that all the various provisions of a contract must be construed, if it can reasonably be done, as to give effect to each). "Looking to the other provisions of a contract and to its general scope, if one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability." Id. at 315-16.
Additionally, the departure of Westphal from employment with Specialized followed by a truck appearing at a former customer of Specialized with the name "H & D Westphal" painted on it and Westphal's reactivation of an authority in which he had no interest because of the prior sale to Specialized, certainly raises concerns that Westphal was not honoring his agreement not to compete and those concerns cannot be resolved by summary judgment.
We vacate the summary final judgment and remand for further proceedings. We affirm the trial court's denial of Westphal's motion for attorney's fees. The contract *427 provision for attorney's fees was correctly interpreted in accordance with Massachusetts law. See, e.g., Precision Tune Auto Care, Inc. v. Radcliffe, 815 So.2d 708 (Fla. 4th DCA 2002).
REVERSED IN PART, AFFIRMED IN PART and REMANDED.
THOMPSON and ORFINGER, JJ., concur.
NOTES
[1] Westphal may have used the authority to operate his trucking business under nine different names.