940 So.2d 1226 (2006)
Kamil F. GOWNI, Appellant,
v.
Wasfi A. MAKAR, et al., Appellee.
No. 5D05-1683.
District Court of Appeal of Florida, Fifth District.
November 3, 2006.
*1227 Janet M. Courtney, of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellant.
Mark R. Malek, Richard E. Torpy and Scott D. Widerman, of The Torpy Group, P.L., Melbourne, for Appellee.
LAWSON, J.
Kamil F. Gowni, defendant below, timely appeals an amended order enforcing a settlement agreement between himself, co-defendant George Mansour, and Dr. Wasfi A. Makar, plaintiff below. Gowni also appeals an amended judgment awarding attorneys' fees and costs to Makar. Gowni contends that the trial court erred in finding, as a matter of law, that liability under the parties' settlement agreement is joint and several. We agree, and reverse.

Facts
On March 12, 2001, Makar filed a complaint against Gowni and Mansour as well as four corporations associated with them, alleging various causes of actions related to business dealings between the parties. Gowni and Mansour filed an answer containing affirmative defenses and counterclaims alleging causes of action against Makar. Several months later, on or about July 21, 2001, Makar, Gowni and Mansour agreed to voluntarily mediate their dispute and entered into a settlement agreement which was mediated by a Ramzi Boutros and witnessed by Father Isaiah Jacob and Dr. Hani Yousseff, all members of a church the parties attended together. The parties memorialized their agreement in a four-page compilation of documents that both parties agree should be construed together as their "settlement agreement."
The first page is a hand-written document, apparently penned by Makar, which generally states that Gowni and Mansour "agree and accept" that they owe Makar $175,000, and states that the liability will be secured with two separate liens: one for $80,000 placed on property owned by Gowni and another for $80,000 placed on property owned by Mansour. The document states that Gowni and Mansour also agreed to pay the $15,000 cash balance immediately. This document is signed by all parties, and witnessed by Father Jacob and Dr. Yousseff.
The second page of the settlement agreement is another handwritten document, also prepared by Makar, and signed only by him. It states that the "entire amount of $175,000 . . . will be paid" as follows: $15,000 "initial cash;" $80,000 "per Kamil Gowni;" and $80,000 "per George Mansour" with "mortgages against each one of them."
Finally, the last two pages of the settlement agreement constitute individual promissory notes in which Gowni promises to pay Makar $80,000 (the first note, and page three of the agreement), and Mansour agrees to pay Makar $80,000 (the second *1228 note, and page four of the agreement). As agreed by both parties at oral argument, these are clearly individual notes. Gowni did not sign as a co-maker or obligor on Mansour's note. Mansour did not sign as a co-maker or obligor on Gowni's note. Gowni's note provided that he would pay off his $80,000 obligation, with interest at 9% per annum, by making monthly payments of $6,996.12. Mansour's note contains an identical payment schedule. Both notes also provide for acceleration in the event of default, and contain a contractual attorneys' fee provision.
Following the execution of these documents, Gowni and Mansour made the initial $15,000 cash payment (with each paying $7,500), and Gowni began making full and timely payments under his note. Mansour, however, never made any of the payments required by his individual note. When Gowni tendered his final payment, Makar refused to accept it, and refused to provide a document stating that Gowni had satisfied his obligation under his individual note, or a satisfaction of mortgage.
Subsequently, both parties filed motions asking the court to enforce the settlement agreement. Makar's motion claims that the settlement agreement provided for joint and several liability, and sought an order requiring Gowni to continue making payments until the entire $175,000 obligation was satisfied in full. Gowni's motion claims that he had satisfied all of his obligations under the agreement, and sought an order requiring Makar to accept his final payment and provide him with a satisfaction of mortgage. Gowni also filed sworn statements from the mediator and both of the independent witnesses to the settlement discussions. All stated under oath that the parties expressly agreed that Gowni and Mansour would each only be legally responsible for paying half of the overall debt, as evidenced by and expressed in the individual promissory notes.
According to the affidavit of the parties' designated mediator, Mr. Boutros: "The parties also agreed that neither Gowni nor Mansour would be legally responsible for payment of more than each man's pro-rata share of the debt and both Gowni and Mansour agreed to execute promissory notes and to deliver mortgages to secure each man's respective share of the debt." Father Jacob testified under oath that all parties agreed that Gowni and Mansour would each only be responsible for paying "50 percent of the [total $175,000] debt." He also testified that it was clear to all that the agreement did not require Gowni to pay Mansour's half of the debt if Mansour did not pay. Finally, Dr. Yousseff swore under oath that: "It was abundantly clear at the mediation that after each man paid his pro rata share ($80,000.00) of the obligation that was owed to Makar, each man would be released from any and all future obligations to Makar. The parties never discussed the notion of holding each man jointly and severally liable for the other man's obligations." Plaintiff Makar also filed an affidavit. In it, however, he did not dispute the sworn statements of mediator Boutros, Father Jacob or Dr. Yousseff. Instead, Makar's affidavit simply recited the unpaid balance from the overall debt.
Without expressing any basis for his ruling, the trial judge told Makar's counsel: "I'm going to let you have the day, you prevail, prepare the order." Subsequently, the trial court signed the order submitted by Makar's counsel, which declared Gowni to be jointly and severally liable to Makar for the unpaid balance of Mansour's note, plus interest, and ordered him to pay the sum of $105,799.23 within 15 days. The court then entered an amended order and "final judgment," which applied a default rate of eighteen *1229 percent per annum. The default rate was presumably taken from Mansour's individual note, since Gowni had not defaulted on his note. Applying the interest rate, the court increased Makar's award to $140,903.77 (the $80,000 balance owed on Mansour's note; the $3,042.68 "final payment" that Gowni tendered but Makar would not accept; and, $57,861.09 in pre-judgment interest).[1] By separate order, the trial court required Gowni to pay Makar's attorneys' fees and costs of litigation, totaling $30,046.75. Therefore, after timely paying (or tendering) $91,453.42, his designated portion of the total $175,000 settlement, plus the agreed interest payments on his individual note, Gowni found himself faced with an order to pay Makar an additional amount totaling approximately $171,000. This appeal ensued.

Arguments Below
In the trial court, both parties argued that the settlement agreement was clear and unambiguous, and should be construed as a matter of law. However, each ascribed a different meaning to the documents. Makar asserted that the agreement unambiguously made Gowni and Mansour jointly and severally liable for the entire debt. Gowni argued that the agreement made him only liable for his half of the debt. As an alternative position, Gowni argued that if the court found any ambiguity, it should consider the proffered parol evidence, which also supported his interpretation.

Arguments on Appeal
On appeal, Gowni's counsel took the very reasonable position that the trial court must have construed the contract as a matter of law, since the court could not have rejected, without an evidentiary hearing, the undisputed sworn statements of the mediator and both independent witnesses to the agreement, all of which supported his interpretation of the contract. Therefore, Gowni challenges the trial court's interpretation of the agreement, and requests that we remand with directions requiring the trial court to consider his proffered parol evidence.
Makar continues to argue that the contract is unambiguous, and should be construed as a matter of law, without reference to parol evidence.

Standard of Review
The construction of a contract is a matter of law, reviewable de novo. E.g., Whitley v. Royal Trails Property, 910 So.2d 381 (Fla. 5th DCA 2005).

Analysis
Reviewing this matter de novo, we see no basis for holding Gowni jointly liable with Mansour for the entire $175,000 obligation. Although the first portion of the parties' agreement could be read as providing for joint liability, the meaning of a contract is not to be gathered from any one phrase or paragraph, but from a general view of the writing as a whole, with all of its parts being compared and construed, each with reference to the others. E.g., Lalow v. Codomo, 101 So.2d 390 (Fla. 1958); Specialized Machinery Transport, Inc. v. Westphal, 872 So.2d 424 (Fla. 5th DCA 2004). Taken as a whole, it is clear *1230 that the contract made Gowni individually liable only for his half of the overall debt. This seems clear when page one of the document (which discusses the overall debt, but also references individual $80,000 mortgages) is read with page two (stating that the liability would be paid "$80,000 per Kamil Gowni" and "$80,000 per George Mansour"). To the extent that there is any ambiguity when reading pages one and two together, it was resolved when Gowni and Mansour each signed individual promissory notes, for their half of the debt only, and made the notes part of the overall agreement. Where the contract, taken as a whole, is clear and unambiguous, there is no reason for further analysis. E.g., Cleveland Consolidated, Inc. v. Haren, 672 So.2d 592 (Fla. 1st DCA 1996).
Therefore, we reverse the trial court's order granting Makar's motion to enforce the settlement agreement, along with the order awarding attorneys' fees and costs to Makar, and remand for further proceedings consistent with this opinion. In doing so, we note that this is not the relief requested by Gowni on appeal. However, our directions to the trial court are dictated by our analysis of the contract. Because we conclude that the contract, as a whole, is not ambiguous, it would be inappropriate to remand for an evidentiary hearing at which parol evidence is considered. Developers of Northlake, Inc. v. Northlake Equities, Inc., ___ So.2d ___, 2005 WL 2138770 (Fla. 4th DCA Sep.7, 2005) (noting that parol or other extrinsic evidence should only be considered if the contract is ambiguous).
REVERSED and REMANDED.
THOMPSON and PALMER, JJ., concur.
NOTES
[1] The amended order also states that Gowni and Mansour "agreed that they were liable, jointly and severally" to Makar, and to pay the debt on the following terms: "1) by paying Plaintiff an initial payment of $15,000; and 2) by paying Plaintiff the remaining $160,000.00, in 12 monthly installments to Plaintiff in the sum of $13,992.24." This is, of course, a gross mischaracterization of the agreement. The amended order also recites that the "undisputed testimony provided by Plaintiff was that Defendants, KAMIL F. GOWNI and GEORGE MANSOUR, owe Plaintiff the sum of $83,042.68. . . ." Although Gowni did not dispute that this was the amount of the overall debt remaining, he certainly disputed that he owed the money.